THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| THOMAS WHITEHEAD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-1027 |
| | ) | |
| SYLVIA MAHONE, et al, | ) | The Honorable James E. Shadid |
| | ) | |
| Defendants, | ) | |
| | ) | |

SUMMARY JUDGEMENT ORDER

Before the Court are the Defendants' Motions for Summary Judgment [d/e #50, #52]. For the reasons set forth below, the Motions are GRANTED.

BACKGROUND

Plaintiff Thomas Whitehead ("Whitehead"), a pro se prisoner, filed this lawsuit on February 1, 2010 pursuant to 42 U.S.C. § 1983. At the time of the events at issue in this case, Whitehead was incarcerated at the Pontiac Correctional Center. He named four defendants in his complaint: Nurse Stephanie Hanes, Medical Director Sylvia Mahone, Warden Guy Pierce, and Illinois Department of Corrections Director Eddie Jones.

Following a Merit Review, Defendant Stephanie Hanes was dismissed from the matter. Whitehead's claims against the remaining Defendants—that they violated his Eighth Amendment right to be free from cruel and unusual punishment in denying him adequate medical care for a fatty growth on his head and hepatitis C—remain.

1

Plaintiff filed a Motion for Summary Judgment and it was subsequently denied [d/e #60]. In two separate antecedent motions, Defendant Mahone and Defendants Pierce and Jones filed for Summary Judgment. These Motions are now before the Court. [d/e #50, #52]

FACTS

The following facts are without substantial controversy.

On April 21, 2009, Whitehead was transferred from the Statesville Correctional Center to the Pontiac Correctional Center. Upon arrival at the Pontiac facility, Whitehead was examined by Nurse Stephanie Hanes. It was noted that Whitehead had a "lump" on the back of his head, and Defendant Dr. Sylvia Mahone was called by the nurse to examine the growth.

Dr. Mahone is a physician who, since 1981, has been licensed to practice medicine in the State of Illinois. Between July 24, 2006 and January 22, 2010, she was employed by Wexford Health Sources, Inc. as the Medical Director at the Pontiac Correctional Center. Her responsibilities as Medical Director included providing medical care and treatment to patients and supervising other medical personnel. During the late summer and fall of 2009, Mahone was on a leave of absence from her responsibilities as Medical Director at the Pontiac facility.

When Dr. Mahone examined Whitehead on April 21st, he described symptoms including blackouts, migraines, and dizziness. After inspecting the Plaintiff's lump, Mahone described the mass as fatty tissue. In addition to calling attention to the lump, Whitehead informed Dr. Mahone that he had hepatitis C and had not received treatment at the Statesville facility for his condition. He referenced a "court order…against IDOC" with regards to his belief that he was positive for hepatitis C. (d/e #60, 3) The Plaintiff's Motion for Summary Judgment reflects the following documents attached as exhibits:

1. An order of the Circuit Court of Cook County, Illinois—dated March 12, 2009—indicating that Whitehead had reported suffering from hepatitis C and requesting a prompt medical examination (d/e #60-3);
2. An order of the Circuit Court of Cook County, Illinois—dated November 17, 2008—ordering that Whitehead submit to testing for HIV/hepatitis C or any other communicable diseases (d/e #60-3); and,
3. An order of the Circuit Court of Cook County, Illinois—dated February 9, 2009—ordering that the Illinois Department of Corrections "test, evaluate, and provide treatment for hepatitis C." (d/e #60-3)

These documents pertain to the Plaintiff's criminal case.

In Dr. Mahone's medical opinion, "to a reasonable degree of medical certainty, the lipoma on Mr. Whitehead's head is a cosmetic condition which does not cause any symptoms." (d/e #52-18, 4) Notwithstanding this medical assessment, Whitehead received medical attention for the lump again on April 25, 2009. Dr. Ngu examined the abnormality and ordered an x-ray of Whitehead's skull. A radiologist's review of the skull series indicated a "history of lipoma on the head," finding only a "moderate soft tissue swelling overlying the occipital area where the lipoma is clinically mentioned" and an absence of "bony abnormalities." (d/e #52-3, 1) No aggressive course of treatment for the mass was adopted by any of the three physicians at that time.

On April 30, 2009, Whitehead submitted emergency grievance report #049806 ("grievance") to express dissatisfaction with the medical attention he had received. The exhibits attached to Plaintiff's complaint indicate that the grievance concerning Plaintiff's hepatitis C and lump was received by the Plaintiff's counselor, Counselor Flex ("Flex"), on June 3, 2009. (d/e #60-3, 5) Flex notified Whitehead that a copy of the grievance had been sent to the Health Care Unit and the original document had been forwarded to the Grievance Office.

On November 24, 2009, the grievance officer received a response from the facility's medical director. After a review of the Plaintiff's medical records, the grievance officer

recommended that the Plaintiff's grievance be denied. This recommendation was reviewed by the office of Defendant Guy Pierce ("Pierce"), warden of the Pontiac facility. He was employed in this capacity during the period relevant to Whitehead's claims. Pierce has no medical training nor is he directly responsible for medically diagnosing or treating inmates. He did not personally sign Whitehead's grievance. Instead, a member of Pierce's staff, acting as his designee, attached his signature on the denial of the grievance on or about December 14, 2009.

On August 12, 2009, Dr. Mahone again met with Whitehead. At this time, she noted that a screening test for hepatitis C has been positive. She ordered a battery of tests, including a hepatitis C genotype, HIV test, and hepatitis C viral load, to guide treatment decisions for Whitehead's hepatitis. On August 24, 2009, Whitehead completed and submitted a formal medical request with a notation enquiring about the status of his hepatitis C treatment.

On September 18, 2009, Dr. Shute examined Whitehead's test results. The tests indicated that Whitehead carried genotype 1 hepatitis C. On September 30, 2009, Dr. Shute discussed the results with Whitehead, counseled him about transmission and avoidance of alcohol or narcotics, and ordered a series of vaccinations. Shute also sought to determine Whitehead's anticipated release date from prison because—if deemed appropriate—a course of treatment for Whitehead's Genotype 1 hepatitis C would take 48 weeks to administer.

Between September and November of 2009, Plaintiff sent letters and copies of his grievance to Defendant Eddie Jones ("Jones") on two separate occasions. Jones is the former Deputy Director of the Illinois Department of Corrections' Northern District. He was employed as the Deputy Director during the time period relevant to Whitehead's claims. Whitehead never received a response to his correspondence with Jones. When documents concerning the grievance were processed in the office of Defendant Eddie Jones, his executive assistant, Maria

4

Tellez-Carlson, addressed the correspondence pertaining to the Plaintiff's grievance. The official communications sent to Eddie Jones' office indicate that Whitehead had been examined by physicians on September 18, 2009, September 30, 2009, and October 14, 2009. (#51-1, 22) They further indicated that Whitehead was waiting for a liver biopsy.

On November 3, 2009, Dr. Mahone met with Whitehead. She discussed his hepatitis C and the necessity of a liver biopsy to determine if treatment was necessary at that time. Because a liver biopsy is a non-emergency procedure that cannot be performed within the prison itself, Dr. Mahone required approval from Wexford Health Sources, Inc. before issuing a referral for the biopsy to be performed at a hospital. Therefore, on November 5, 2009, Dr. Mahone spoke to Dr. Dina Paul, a hepatologist specializing in liver diseases like hepatitis C. Dr. Paul approved Mahone's biopsy request and, on December 2, 2009, the procedure was performed at Decatur Memorial Hospital.

Records attached as exhibits to the Plaintiff's Response indicate that on December 24, 2009 he was seen by a member of the medical staff regarding "stress related to his perceptions about medical care." (d/e #57, 18) On or about January 5, 2010, Whitehead attempted to kill himself by administering an overdose of pills. He also described anxiety attacks. He was placed on suicide watch. (d/e #57, 20).

On January 12, 2010, Dr. Mahone met with Whitehead to discuss the results of the biopsy and the hepatologist's diagnosis. In Dr. Paul's assessment, Whitehead's hepatitis C was stable and no treatment was required at that time. Instead, she recommended only an additional liver biopsy in three to five years to reassess the situation. Additionally, Dr. Mahone again discussed Whitehead's lipoma. Mahone reiterated her earlier assessment that, in her medical opinion, no treatment was required for the lipoma.

On April 21, 2009, Whitehead was transferred to Statesville Correctional Center and on February 1, 2010, he filed the current action.

STANDARD

A moving party is entitled to a grant of summary judgment where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). After adequate time for discovery, if a party has failed to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," a genuine dispute is absent and summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If, however, there is a genuine issue of material fact, "[the issue] can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party." Dockerty-Bostron v. Waukesha Cnty., 744 F. Supp. 877, 879-80 (E.D. Wis. 1990); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The moving party bears responsibility for demonstrating to the Court the absence of a triable issue. Celotex, 477 U.S. at 322; see Wells v. Bureau County, 723 F. Supp. 2d 1061, 1071 (C.D. Ill. 2010). This burden is discharged by "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. A sufficient showing can be accomplished by "citing to particular parts of materials in the record, including depositions, documents…affidavits or declarations…or other materials" in order to demonstrate that "the materials cited do not establish the…presence of a genuine dispute." Fed. R Civ. P. 56(c)(1); see Celotex, 477 U.S. at 322.

Only those facts that might affect the outcome of the suit are "material." Cox v. Hartshorn, 503 F. Supp. 2d 1078, 1081 (C.D. Ill. 2007); see First Ind. Bank v. Baker, 957 F.2d

6

506, 507 (7th Cir. 1992). A mere allegation of a factual dispute between the parties is insufficient to defeat a motion for summary judgment where the motion is properly supported. Anderson, 477 U.S. at 247; see Cox, 503 F. Supp. at 1082.

When ruling on a motion for summary judgment, the court's role does not encompass "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts." Anderson, 477 U.S. at 255; see Dockerty-Bostron, 744 F. Supp. at 879 (E.D. Wis. 1990). Rather, if there is any doubt regarding the presence of a genuine issue of material fact, it ought to be resolved against the moving party. Anderson, 477 U.S. at 255; Wells, 723 F. Supp. 2d at 1071; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir.1988). Therefore, the court is obligated to weigh all evidence "in a light most favorable to the nonmoving party." Cox, 503 F. Supp. 2d at 1081; Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1440 (7th Cir.1992).

ANALYSIS

The Defendants argue that the Plaintiff cannot demonstrate that they violated his Eighth Amendment rights by failing to provide adequate medical care. To prevail on such a claim, the prisoner must demonstrate that he endured "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see Verser v. Elysea, 113 F. Supp. 2d 1211, 1214 (N.D. Ill. 2000). This demonstration requires the Plaintiff to satisfy a dual pronged test. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Rhodes v. Chapman, 452 U.S. 337, 346 (1981). The first prong of the test calls for a showing that the deprivation alleged was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). In addition to this objective prong of the test, the Plaintiff must demonstrate a second, subjective

component: that the defendant or defendants acted with "deliberate indifference." Id. at 828; Cox, 503 F. Supp. at 1085.

Plaintiff in the present action has brought his claims pursuant to 42 U.S.C. §1983 with regard to two distinct medical conditions: hepatitis C and a lipoma on the back of his head. The following analysis will be divided into two parts. Section one will discuss whether the facts indicate Plaintiff's conditions satisfy the "sufficiently serious" prong of the Farmer test. Turning to the second prong of the Farmer test, section two will examine the Plaintiff's claims of deliberate indifference against Defendant Dr. Mahone and, finally, against nonmedical Defendants Guy Peirce and Eddie Jones.

I. SERIOUS MEDICAL CONDITIONS

Defendant Dr. Mahone has argued that the Plaintiff cannot demonstrate that the lump on his head constitutes a serious medical condition. It is well established that the "elementary principles" of the Eighth Amendment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." Estelle, 429 U.S. at 103. Prisoners are dependent on prison authorities to treat their medical needs. Id. Where these needs are serious, deliberate indifference can result in "unnecessary and wanton infliction of pain" that serves no penological purpose and is proscribed by the Eighth Amendment. Id. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173(1976)).

However, a "serious medical need" is hardly "self-defining." Gutierrez v. Peters, 111 F.3d 1364, 1370 (7th Cir. 1997). Naturally, if a condition is "life threatening or poses a risk of…lingering disability if not treated at once," it constitutes a serious need. Cox, 503 F. Supp. at 1084 (quoting Davis v. Jones, 936 F.2d 971, 972 (7th Cir. 1991)). However, the Supreme Court has indicated that medical needs need not rise to this level to be serious. Gutierrez, 111 F.3d at

1370. On the contrary, if denial or delay of medical care for an inmate's medical needs results in needless pain and suffering, the "serious medical need" prong is satisfied. Id. Reflecting this broader definition, the Seventh Circuit has recognized that needs "diagnosed by a physician as mandating treatment" and needs "even a lay person would easily recognize [as requiring] a doctor's attention" are serious. Id. at 1373; see Verser, 113 F. Supp. 2d at 1214.

The Plaintiff articulated in his complaint a claim of deliberate indifference with regard to two medical conditions: hepatitis C and a lump on the back of the Plaintiff's head. Hepatitis C is a condition that "even a lay person would easily recognize [as requiring] a doctor's attention." Gutierrez, 111 F.3d at 1373. It can be safely assumed—and it appears to be uncontested by the parties—that hepatitis C constitutes a serious medical need. See Outlaw v. Ridley-Turner, 54 F. App'x. 229, 231 (7th Cir. 2002). Whether the Plaintiff's lump is a serious medical need for the purpose of his claim is less certain.

The lump came to the attention of Defendant Dr. Mahone when Whitehead arrived at Pontiac Correctional Center on April 21, 2009. She examined the lump at the back of Plaintiff's head and noted that it appeared to be a benign fatty tumor known as a lipoma. An additional examination by a second physician and a radiologist's review of an x-ray series appear to confirm that the abnormality is indeed a lipoma. Dr. Mahone has submitted an affidavit that, in her medical opinion, the lipoma was merely a cosmetic condition that would not be accompanied by any symptoms.

The Plaintiff does not contest the medical classification of the lump as a lipoma. He has stated, however, that he suffered migraines, dizziness, and blackouts due to the condition. The Seventh Circuit has declined to categorically determine whether lipomas constitute a serious medical need. Nevertheless, where the Plaintiff can allege only generalized symptoms of

discomfort generated by a lipoma, summary judgment tends to be granted. For example, in Flores v. Welborn, 119 F. App'x. 6 (7th Cir. 2004), a plaintiff brought an action for deliberate indifference regarding a lipoma under the skin on his hip. Id. Though he complained of pain and numbness throughout his leg, the prisoner was unable to provide anything more than "his own opinion that his growth…was improperly treated" and the Court of Appeals confirmed summary judgment for the defendants. Id. at 9; see also Martinez v. Hedrick, 36 F. App'x. 209, 211-12 (7th Cir. 2002)(observing that Plaintiff submitted no evidence that lipoma was a serious medical need where he complained only that the lump was tender when touched and prevented him from sleeping on his left side); see also Kendrick v. Frank, 310 Fed. Appx. 34 at *3 (7th Cir. 2009)(finding an absence of evidence that plaintiff suffered a serious medical need when plaintiff complained only that his lipoma was tender to the touch).

In the present instance, as in Flores, the Plaintiff has not provided any evidence beyond his assertions of pain and discomfort to support the notion that his lipoma is a serious medical need. Instead, his complaints about suffering from dizziness and other symptoms—complaints appearing in his medical records and grievance—are the only material Plaintiff has set forth to establish that his lipoma is a serious medical need. Though all evidence has been taken in a light most favorable to the Plaintiff, given the lack of evidence to support the notion that the lipoma posed a substantial risk to his welfare, Whitehead has not demonstrated that the condition constitutes a serious medical need. His claims against the Defendants must rest upon those medical needs relating to his hepatitis C. Additionally, even if the Defendant could somehow establish that his lipoma was a serious medical condition, he cannot demonstrate that the Defendants were deliberately indifferent.

II. DELIBERATE INDIFFERENCE

Defendant Dr. Mahone has argued that the Plaintiff cannot establish the subjective prong of the Farmer test because his lipoma was examined repeatedly and she was following the recommendations of a medical specialist with regard to his hepatitis C. To satisfy the second prong of the Eighth Amendment Farmer test, a plaintiff must demonstrate that the defendants acted with deliberate indifference to his or her medical needs. Farmer, 511 U.S. at 828. This demonstration requires more than a showing of negligence or even gross negligence. Cox, 503 F. Supp. 2d at 1085. It is well established that an Eighth Amendment claim is not coterminous with a medical malpractice claim. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997); Bryant v. Madigan, 84 F.3d 246, 247 (7th Cir.1996). "Mere medical malpractice or a disagreement with a doctor's medical judgment" does not establish deliberate indifference. Estelle, 429 U.S. at 107; see Slater v. Powers, CIV. 09-CV-073-MJR, 2009 WL 2371815 (S.D. Ill. Aug. 3, 2009); Sellers v. Henman, 41 F3d 1100, 1102 (7th Cir. 1994). Rather, it must be established either that a defendant "wanted harm to come to the plaintiff" or "must have been completely unconcerned about plaintiff's welfare" with regard to a serious medical need. Cox, 503 F. Supp. 2d at 1085. The "deliberate indifference" standard is a "high hurdle" for prisoners pursing claims against prison authorities. Peate v McCann, 294 F3d 879, 882 (7th Cir. 2002); see Cox, 503 F. Supp. 2d at 1085.

    a. Deliberate Indifference by Medical Personnel

The subjective element of the Plaintiff's deliberate indifference claim against Defendant Dr. Mahone fails; Whitehead's claims with regard to his lipoma and his hepatitis C lack a sufficient evidentiary basis. The Constitution is not a "medical code that mandates specific medical treatment." Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996). In Eighth Amendment

claims against medical professionals, a prisoner must provide more evidence than mere dissatisfaction with a course of treatment elected by the defendant. Id. An actionable claim against a medical professional requires that his or her medical decisions represent "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Sain v. Wood, 512 F.3d 886, 895 (7th Cir. 2008)(quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir. 1998)).

The Plaintiff's claims with regard to his lipoma fail because the lump was x-rayed, repeatedly examined, and determined by at least two medical professionals to be a lipoma. There is no evidence that the condition was misdiagnosed or mistreated. Plaintiff's subjective assertion that he suffered due to the condition does not establish that Defendants were deliberately indifferent to the condition.

The Plaintiff's assertion that his hepatitis C went untreated constitutes the remainder of his claim against the Defendants. Plaintiff is correct to the extent that the record does not indicate either that he was admitted to a hepatitis C clinic for active treatment or that any aggressive course of therapeutic treatment was prescribed. Nevertheless, Plaintiff has provided little evidence that Dr. Mahone disregarded an excessive risk to the Plaintiff's health. Instead, the record indicates that Dr. Mahone discussed hepatitis C with the Plaintiff on multiple occasions, ordered a battery of diagnostic tests for hepatitis C, secured a referral for a liver biopsy for hepatitis C, and reviewed treatment decisions for hepatitis C with Dr. Dina Paul, a hepatologist specializing in the treatment of hepatitis and other liver diseases. Dr. Mahone's decision not to implement a course of therapeutic treatment, under the guidance of a specialist, does not represent "a substantial departure from accepted professional judgment." Sain, 512 F.3d at 895.

Additionally, even if there were evidence that Mahone's course of treatment was negligent, Dr. Mahone's election of one treatment—here maintenance of the status quo—over another—perhaps a 48 week treatment cycle—do not amount to deliberate indifference.

Though it is not explicit in his claims, the Plaintiff might advance a theory of liability and indifference based on the delay between his first contact with the Defendant on April 21, 2009 and August 12, 2009 (when baseline test were ordered to determine a treatment plan for hepatitis C) or December 2, 2009 (when Plaintiff's liver biopsy was performed). Certainly, the Seventh Circuit has recognized excessive delays in medical diagnosis or treatment as a possible foundation for a claim of deliberate indifference. Langston v. Peters, 100 F.3d 1235 (7th Cir. 1996). However, here as in Zimmerman v. Prison Health Services, Inc., 36 F. App'x. 202, 203-04 (7th Cir. 2002), any delays in the diagnosis of Plaintiff's hepatitis C appear to be the result of "bureaucratic obstacles" or "scheduling difficulties." Id. Nothing appears to indicate that Dr. Mahone disregarded Plaintiff's condition. Moreover, if the Plaintiff were to allege delay, he would need to demonstrate that the delay had a detrimental impact on his condition. Langston, 100 F.3d at 1240 (agreeing with the Eighth Circuit that claims relying on delay in medical treatment must be established via verifying medical evidence before a defendant's conduct could be deemed a constitutional violation). No such evidence has been provided by the Plaintiff.

The Plaintiff has alleged that he suffered a suicide attempt and anxiety as a result of deliberate indifference to his hepatitis C and lipoma. He has not alleged that medical personnel or prison authorities were deliberately indifferent to his anxiety or needs stemming from his suicide attempt. The Plaintiff is unable to establish deliberate indifference with regard to his hepatitis C and lipoma in the first instance and has not put forth evidence that any delay in treatment negatively impacted these conditions. Even if the evidence did establish that a delay in

medical care contributed to his mental conditions, these medical needs are discrete conditions for which the Plaintiff did receive medical attention. The record reflects that Whitehead was under the care of physicians throughout his tenure at the Pontiac facility in a manner that does not reflect deliberate indifference.

The Eighth Amendment does not entitle the Plaintiff to demand specific care or the best possible care. Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). Rather, he is entitled to "reasonable measures to meet a substantial risk of serious harm [to him]." Id. The record indicates that reasonable measures were taken. Though Mahone's decisions disappointed Whitehead's expectations, they did not exhibit deliberate indifference to satisfy the second prong of the Farmer test.

b. Deliberate Indifference by Nonmedical Personnel

Defendants Guy Pierce, Warden of the Pontiac Correctional Center, and Eddie Jones, Deputy Director of IDOC's Northern Region, argue that hey cannot be held liable under § 1983 because they were not "personally responsible" for the deprivation of the Plaintiff's Eighth Amendment rights. A defendant cannot be held liable pursuant to 42 U.S.C. § where the plaintiff cannot demonstrate that the defendant caused or participated in the alleged constitutional violation. Wolf-Lillie v. Sonquist, 699 F.2d 864, 864 (7th Cir. 1983); McBride v. Soos, 679 F.2d 1223, 1227 (7th Cir. 1982). The Plaintiff's evidence must demonstrate "direct responsibility for the improper action" via a "causal connection or affirmative link between the conduct complained of and the individual sued." Wolf-Lillie, 699 F.2d at 869. A prison authority's mere holding of a supervisory position is inadequate to sustain an Eighth Amendment claim. Pacelli v. DeVito, 972 F.2d 871, 877 (7th Cir. 1992).

The crux of Whitehead's claim against both Guy Pierce and Eddie Jones is that they allowed him to suffer despite his grievance reports calling their attention to his needs. He argues that, as authority figures, they could have assisted him in securing medical care. The Seventh Circuit has held that if a supervisor denies an inmate's appeal or grievance, this denial is capable of establishing "personal involvement" for §1983 purposes. Verser, 113 F. Supp. 2d at 1215; Pride v. Peters, No. 94-2025, 1995 WL 746190, at *1 (7th Cir. Dec. 15, 1995). However, deliberate indifference requires "actual knowledge" of a serious risk of harm to a prisoner. Bond v. Aguinaldo, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002)(holding that the Plaintiff cannot sue the non-medical authorities who denied his grievance unless it were evident even to a layperson that treatment prisoner received was inadequate or inappropriate); see also Williams v. Cearlock, 993 F. Supp. 1992, 1997 (C.D. Ill. 1998)(holding that warden and assistant warden were not subject to plaintiff's § 1983 claims where they had no direct responsibility for plaintiff's medical care).

Both Guy Pierce and Eddie Jones have submitted affidavits and evidence to support the conclusion that neither official personally oversaw Whitehead's grievance as it passed through their respective offices. Guy Pierce has asserted that a member of his staff, a designee, was responsible for affixing his signature to Whitehead's grievance. Likewise, Eddie Jones argues that his Executive Assistant processed Whitehead's grievance. The Plaintiff has not supplied any evidence, apart from his belief in the Defendant's power as authorities, that either Pierce or Jones was personally involved in the denial of his grievance.

Even if the Plaintiff could and did establish that these Defendants personally responded to his grievance, neither official was under a duty to fix the alleged misdoings of Dr. Mahone. Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009)(noting that "the contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an

effort to evade, by indirection, [the] rule that public employees are responsible for their own misdeeds but not for anyone else's"). Guy Pierce and Eddie Jones, as nonmedical IDOC officials, are entitled to "relegate to the prison's medical staff the provisions of good medical care." Slate v. Powers, CIV. 09-CV-073-MJR, 2009 WL 2371815 (S.D. Ill. Aug. 3, 2009).

Pierce and Jones have submitted uncontested evidence that procedures were followed to ensure that the Plaintiff was receiving adequate medical care. Whitehead's initial grievance, dated April 30, 2009, was forwarded to the healthcare unit for response. A response from the Medical Director to the grievance officer, dated November 24, 2009, indicated that the Plaintiff had been examined by physicians and was being followed by the hepatitis C clinic. It was only after these finding has been established that Pierce's office concurred with the denial of the grievance on or about December 14, 2009. Similarly, Jones's office, aware of the Plaintiff's medical issues via a letter dated on or about October 15, 2009, was apparently assured by the Plaintiff's medical records that his medical concerns were being addressed.

The record contains no evidence that either Defendant Jones or Pierce was personally involved in the Plaintiff's treatment for hepatitis C. However, the record does indicate that the Plaintiff was under the care of medical professionals throughout his tenure at the Pontiac Correctional Center. Given the absence of any genuine issue of material fact regarding the Defendants' personal involvement in Whitehead's allegations of Eighth Amendment violations, the Plaintiff's allegations cannot survive Defendants' Motion for Summary Judgment.

IT IS THEREFORE ORDERED that:

1) The Defendants' motion for summary judgment is granted. [d/e #50, #52 ]. The clerk of the court is directed to enter judgment in favor of the Defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.

4) The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full. The plaintiff must notify the clerk of the

court of a change of address and phone number within seven days of such change.

5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 29th day of July, 2011.

                                              <u>s/ James E. Shadid</u>
                                              JAMES E. SHADID
                                              UNITED STATES DISTRICT JUDGE